UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA,
TERRE HAUTE DIVISION

BMO Harris Bank, N. A.,

    Plaintiff,

vs.

MTR FARMS, L.L.C., *et al.*,

    Defendants.

CAUSE NO. 2:16-cv-133-LJM-DKL

## ORDER ON PLAINTIFF'S NOTICE OF MOTION & MOTION FOR ORDER LIMITING SCOPE OF DISCOVERY

Plaintiff BMO Harris Bank, N.A. ("BMO"), seeks a protective order under Fed. R. Civ. P. 26(c) and an order under 30(d)(3) barring certain discovery by both sets of defendants. Dkt. No. 47. For the reasons explained below, its motion is **GRANTED**.

### I. BACKGROUND

In brief, BMO alleges that, in September and October, 2013, it made loans to defendants MTR Farms, L.L.C. ("MTR"), and Robinson Land Holdings, L.L.C. ("RLH") (collectively, the "Borrowers"), which were documented by a promissory note and an agricultural loan agreement (both by MTR), and by a mortgage note (by RLH) (collectively, the "Notes"). BMO's interests were secured by an agricultural security agreement (by MTR), a mortgage (by RLH), and an assignment agreement (by RLH), all of which were filed and recorded. In addition, the only two members of both MTR and RLH, defendants Byron T. Robinson and Michael Robinson, gave to BMO their unconditional personal guarantees for the Notes (Byron T. Robinson for MTR's obligations and Michael Robinson for RLH's obligations). MTR defaulted when its promissory note fully matured in April, 2015. Since BMO gave formal notice of default in

May, 2015, neither MTR nor the guarantors have cured the default. *Amended Complaint*, ¶¶ 12-22.

On September 22, 2015, BMO, the Borrowers, and the guarantors executed a Forbearance Agreement whereby BMO agreed to forbear, up to December 31, 2015, from taking action to collect the Borrower's obligations in return for the Borrowers' and the guarantors' agreements, in part, to grant additional security to BMO by amending the mortgage to pledge the real property as collateral for all of the obligations and indebtedness of the Borrowers. The Forbearance Agreement also provides that the Notes, guarantees, security agreements, mortgage, and other loan documents are each cross-defaulted and cross-collateralized, with the effect that defaults under MTR's promissory note and the Forbearance Agreement constitute defaults under each of the other loan documents. The effect of the Forbearance Agreement is that each of the Notes is due and payable to BMO, which is entitled to possess and sell all of the pledged collateral to secure its interests.

After the forbearance date of December 31, 2015, and despite BMO's demands, the Borrowers and guarantors have failed to pay what is owed under the loan documents. *Amended Complaint*, ¶¶ 23-27, 29.

In return for BMO's forbearance, the Robinson Defendants also agreed in the Forbearance Agreement to release BMO from "any and all actions, obligations, costs, damages, losses, claims, liabilities and demands of whatever kind and nature which any of the Obligors has had, now has or hereafter may have, arising from or by reason of or in any way connected with any transaction, matter, event or circumstance which occurred or existed prior to the date hereof." Forbearance Agreement, Dkt. No. 37-7, § 11

("Releases"). The Robinson Defendants also agreed and acknowledged "that each has no offsets, defenses, claims, or counterclaims against [BMO] with respect to the Obligations, any obligations related thereto, or otherwise and that if each Obligor now has or ever had any such offsets, defenses, claims, or counterclaims against [BMO], whether known or unknown, at law or in equity, from the beginning of the world through this date and through the time of the execution of this Agreement, all of them are expressly **WAIVED**, and each of the Obligors hereby **RELEASES** [BMO] from any liability therefore [*sic*]." *Id*. The Robinson Defendants were represented during the negotiation of the Forbearance Agreement by the same attorney that represents them in the present action. *Affidavit of Erin West*, Dkt. No. 48, ¶ 8. Any claims and defenses released by the Robinson Defendants by the Forbearance Agreement are collectively referred to herein as the "Released Claims."

The Daugherty Defendants (Larry Joe Daugherty and Phyllis Daugherty) contend that they lent money to one, some, or all of the Robinson Defendants (it is not clear), which loan is secured by a mortgage on "the property at issue in this proceeding." *Larry Joe Daugherty and Phyllis M. Daugherty's Objection to BMO Harris Bank, N.A.'s Motion for Order Limiting Scope of Discovery*, Dkt. No. 53 ("*Daugherty Response*"), at 2. BMO alleges the mortgage attaches to RLH's real property that also serves as secured collateral for BMO's loans. *Amended Complaint*, ¶ 30. The Daughertys' mortgage was executed and recorded on September 14, 2015 (before execution of the Forbearance Agreement). *Daugherty Response*, at 2; *Amended Complaint*, ¶ 30. BMO alleges that the Daughertys' mortgage is subsequent, subordinate, and junior to its own mortgage on the RLH property. *Amended Complaint*, ¶ 31.

3

On March 29, 2017, the Robinson Defendants deposed two of BMO's employees, Laureen K. Mueller, a vice president and senior relationship manager, and Jason L. Krueger, whose position is not explained on the present motion. The Dougherty Defendants also attended the depositions and questioned the deponents. The defendants asked a series of questions of Ms. Mueller regarding subjects relating to, *inter alia*, the origination of the Notes; T. J. Mattick, BMO's loan officer, or "relations manager," who originated the Notes; BMO's loan application and approval process; and BMO's knowledge of and reliance on certain information and forms in originating and approving the Notes. Interpreting these questions and subjects as relating to the Released Claims, which predate the execution of the Forbearance Agreement, BMO's counsel objected and instructed Ms. Mueller not to answer. The defendants' counsel then described a series of additional questions that he intended to pose to the deponents and BMO's counsel indicated that he would make the same objection and deliver the same instruction in response. Counsel contacted the Court and BMO requested, and the Court granted, leave to file a Rule 30(d)(3) motion. *Minute Entry for March 29, 2017, Discovery Conference*, Dkt. No. 46. The depositions were then suspended, pending a ruling on BMO's motion.

Following the suspension of the depositions, the Robinson Defendants served requests for production on BMO seeking documents that BMO contends relate to the same subject matters to which it objected during the depositions. *Robinson Defendants' Request for Production to BMO Harris Bank*, Dkt. No. 48-3 ("Requests"). In brief, for the time period from January 1, 2013, to the date of response, the Requests ask for all documents **(1)** that BMO relied upon, referred to, or that relate to MTR's and RLH's loan

4

accounts with BMO; **(2)** that BMO possesses that could be considered to constitute part of MTR's and RLH's loan accounts; **(3)** that constitute the personnel file of T. J. Mattick; **(4)** that constitute any non-competition or restrictive contract applicable to T. J. Mattick; **(5)** that describe the compensation formula used for or offered to T. J. Mattick; **(6)** that describe agricultural lending policies of BMO; and **(7)** that are the agricultural loans closed by T. J. Mattick.

BMO argues that information about the origination of the Notes, BMO's loan policies, T. J. Mattick (the originating loan officer), and all other matters pre-dating the Forbearance Agreement are irrelevant and undiscoverable because the releases therein have rendered them so. They contend that the requested discovery can be relevant to only the Released Claims and, therefore, is outside the permissible scope of Rule 26.

The Robinson Defendants argue that the information they seek is discoverable for several reasons. First, the releases in the Forbearance Agreement did not waive their rights to plead affirmative defenses or to obtain discovery. Second, the Forbearance Agreement did not establish September 22, 2015, as a discovery cut-off date. Third, it was not until about a year after execution of the Forbearance Agreement that the general public and the Robinson Defendants learned of the "broader banking industry's use of questionable practices," including high pressure sales tactics, and it was not until the deposition of the Robinson Defendants' bookkeeper in March, 2017, that information surfaced in this case that indicated that BMO's loan officer, Mr. Mattick, encouraged the Robinson Defendants to "incur debt beyond their capacity to service." *Objection to Motion for Order Limiting Discovery*, Dkt. No. 50 ("*Robinsons' Response*"), at 2-3. Fourth, the information sought is relevant to the subject matter of the case and good cause exists to

5

permit its discovery. Fifth, the public, the "broader society," has an interest in discovering the information.

The Daugherty Defendants also want to discover information that was requested and refused during the depositions. They want information "concerning the relationship which led to the financing extended to the Robinson Defendants, and the actions by BMO which prevented the refinancing of the same once the Robinson Defendants were unable to stay current on the obligation to BMO." *Daugherty's Response*, at 3. They first argue that they "have an interest in exploring the events and circumstances concerning the loan which is claimed to be a priority, the conduct and good faith of BMO in making the same, and the circumstances which led to this proceedings," because such information "may lead to admissible evidence concerning the priority of their mortgage dated prior to the Forbearance Agreement." *Id.*, at 2. They point out that the Forbearance Agreement does not bar this area of inquiry because they did not sign the Agreement and, thus, did not release any of their claims, defenses, or other rights pertaining to the pre-Agreement period. *Id.* Second, they argue that they have an interest in discovering BMO's role in preventing the Robinson Defendants from refinancing the loan, which caused their default. According to the Daugherty Defendants, the Robinson Defendants attempted to refinance MTR's loan through Mr. Mattick, who had left BMO and was working for a new lender at that time, but BMO interposed an objection based on its non-competition agreement with him. That objection ended the refinancing effort and caused the Robinson Defendants to default on the loan and guarantees. The Daugherty Defendants argue that, "[t]o the extent BMO acted to the detriment of the Daughertys, the non-compete should be discoverable." *Id.*, at 3.

## II. **DISCUSSION**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Although, in 2000, relevance to the subject matter of a case was removed from the text of the rule as a legitimate subject of discovery, courts still retain the authority to permit discovery of "any matter relevant to the subject matter involved in the action for good cause." Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2000 amendment. However, the removal of subject-matter relevance from the text was intended to focus parties and courts on the claims and defenses and to signal that courts have the authority to "confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Id.*

**Robinson Defendants.** The Court first notes that the Robinson Defendants do not suggest any defense against the releases in the Forbearance Agreement. The closest they come is their assertions that allegations and evidence of abusive industry-wide loan practices and BMO's own abusive practices did not emerge until well after the Robinson Defendants executed their releases. However, the Robinson Defendants were represented by present counsel in the Forbearance Agreement negotiations and they do not assert that their agreements were obtained by duress or were otherwise not voluntary. As quoted above, the release is broad: each of the Robinson Defendants released any and all actions, obligations, costs, damages, losses, claims, liabilities, and demands it "has had, now has, or hereafter may have," and waived any offsets, defenses, claims, or counterclaims against BMO, "whether known or unknown." In the circumstances as pled

and asserted, and in the face of this clear language, the Robinson Defendants' later discovery of possible defenses, offsets, or counterclaims against the MTR loan does not impugn the validity of their releases. In addition, although the release language does not mention "affirmative defenses" by specific label, it releases "offsets, defenses, claims, or counterclaims," which encompasses affirmative defenses.

Therefore, as to the Robinson Defendants, matters relating to the origination of the Notes, BMO's practices or policies that predate the Forbearance Agreement, or any incidents occurring before the Forbearance Agreement are irrelevant to the claims and defenses in this action.[1]

The Robinson Defendants also argue that the information they seek is relevant to the subject matter involved in this case, but they neither identify the subject matter nor attempt to show the required good cause to permit discovery of it. Rather, they confusingly argue only that "[t]he party 'resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure'" *Robinsons' Response,* at 4 (quoting *Beach v. City of Olathe Kansas*, 203 F.R.D. 489, 496 (D. Kan. 2001)); and that BMO "has failed to allege any specific harm occasioned by permitting the discovery to occur." *Id.* But the Robinson Defendants misquote the passage from *Beach* and, thus, mistake its meaning. The full and accurate quotation is: "When the discovery sought appears relevant, the

---

[1] The Robinson Defendants did not argue that any of their questions or requests are relevant to claims and/or defenses that they did not release by the Forbearance Agreement, by being either "directly pertinent to the incident in suit" or indirectly relevant, *e.g.*, impeachment material. See Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2000 Amendment.

8

party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Beach*, 203 F.3d at 496. BMO has shown that the objected-to discovery does not appear to be relevant and, by not identifying the subject matter to which they assert the discovery is relevant, or presenting a supporting legal argument, the Robinson Defendants have not shown that their discovery is relevant. Thus, BMO did not have the burden to show prejudice or lack of proportionality.

The Robinson Defendants next argue that the discovery should be allowed because a court must "tak[e] into account society's interest in furthering 'the truthseeking function' in the particular case before the court," *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); and the "broader society" is interested in discovering whether BMO employed questionable sales tactics. But the Robinson Defendants' citations do not support the notion that a court should consider the public's general interest in learning information divorced from its relevance to the case before it. Rather, the Court should consider the public's interest in the truthseeking function operating within the parameters of the case before the Court. If information sought is not relevant to a claim or defense in the case, or to its subject matter, then the Court may not permit discovery simply because it believes that there might be a benefit to the public from disclosure of the information.

The Robinson Defendants have not shown that the information they seek is relevant to a claim or defense in the case and they have not shown that it is relevant to a

subject matter involved in this case, or that good cause justifies permitting subject-matter discovery.

**Daugherty Defendants.** The Daugherty Defendants assert that information regarding the origination of the Robinson Defendants' defaulted note is relevant to the priorities of their and BMO's security interests but they offer no legal explanation supporting that assertion and the Court will not construct one for them.

Similarly, the Daugherty Defendants only assert that BMO might have acted to their detriment by "blocking" the Robinson Defendants' refinancing efforts with Mr. Mattick, but they offer no legal explanation how, if true, that circumstance supports either a defense against BMO's priority claims or a counterclaim against BMO. Further, they offer no support for the proposition that BMO's objection to Mr. Mattick's involvement in the refinancing efforts was legally and factually unreasonable, in bad faith, or otherwise improper or actionable.[2] Again, the Court will not construct their arguments for them.

Moreover, the Daugherty Defendants admit that they seek this discovery in order to *determine* whether a defense or claim arises from BMO's objection to Mr. Mattick's refinancing involvement. But the 2000 amendment to Rule 26(b)(1) "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Rule 26(b)(1) Advisory Committee Note to 2000 amendment. Because the Daugherty Defendants have not pled any explicit claim or defense based on BMO's non-competition objection, and

---

[2] The Daugherty Defendants also did not show that BMO owed a duty of good faith and fair dealing to them in relation to its non-competition agreement with Mr. Mattick or to its involvement in the Robinson Defendants' refinancing efforts.

10

have not explained how a claim or defense is encompassed within the existing pleadings, they have not shown the relevance of their requested discovery.

Because BMO has reasonably challenged the relevance of the information sought by the Daugherty Defendants' deposition questions and they have not shown their relevance, BMO's motion will be granted as to them.

### III. CONCLUSION

Plaintiff's *Notice of Motion and Motion for Order Limiting Scope of Discovery*, Dkt. No. 47, is **GRANTED**. Pursuant to Fed. R. Civ. P. 30(d)(3)(B), the defendants' suspended depositions of Laureen K. Mueller and Jason Krueger are ordered terminated. Pursuant to Fed. R. Civ. P. 26(c)(2)(D), the Robinson Defendants' inquiry into facts pre-dating the Forbearance Agreement and the Daugherty Defendants' inquiry into BMO's origination and processing of the Robinson Defendants' loans, its policies and practices for loan origination and processing, its non-competition agreement with Mr. Mattick, and its objection to Mr. Mattick's involvement in the Robinson Defendants' refinancing efforts is forbidden. BMO need not comply with the *Robinson Defendants' [Second] Request for Production to BMO Harris Bank*, Dkt. No. 48-3. Defendant MTR Farms LLC's *Motion to Set Hearing on Objection to Protective Order*, Dkt. No. 51 is **DENIED**.

IT IS SO ORDERED this 5th day of June, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to all registered counsel of record via ECF.